# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Kash Oil & Gas Inc | Civil Action No. 6:16-cv-00380 |
| versus | Judge Robert G. James |
| Gulf Coast Western LLC | Magistrate Judge Carol B. Whitehurst |

## REPORT AND RECOMMENDATION

Before the Court, on referral from the district judge, is a Motion For Partial Dismissal filed by ISLA Resources, LLC ("ISLA") and Louis E. Bernard, Jr. ("Bernard") [Rec. Doc. 41] and a Motion To Partially Dismiss filed by Kash Oil & Gas Inc. ("KASH"), which adopts ISLA's Memorandum Brief in support of its motion [Rec. Doc. 46], Gulf Coast Western, LLC's ("GCW") Memorandum in Opposition to both Motions [Rec. Doc. 50] and ISLA's Reply thereto [Rec. Doc. 56]. For the reasons that follow, the undersigned recommends that the Motion be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action was removed to this Court on March 22, 2016, from the Fifteenth Judicial District Court, Lafayette Parish, Louisiana under the Court's diversity jurisdiction. *R. 1*. According to KASH's Petition, *R. 1*, GCW and ISLA entered into a Participation Agreement ("PA") dated September 11, 2012 and a revised PA on April 1, 2013 (collectively the "PAs"), by which they exchanged and shared interests in mineral rights relating to certain property in Evangeline Parish and St. Landry

Parish, Louisiana. The principal difference in the 2012 and 2013 PAs was the amount of interest owned by GCW.[1] KASH was hired by GCW to serve as operator on the Fuselier and Landry Prospects under a Joint Operating Agreement ("JOA"). *R. 1-2, Exh. A; R. 5.* In the original Petition, KASH alleged that it incurred expenses and received invoices from third parties which it paid and forwarded for reimbursement to the various joint non-operating interests, including GCW, all pursuant to the terms of the JOA. *Id. at ¶5.* KASH further alleged that GCW failed to pay invoices in the amount of $207,505.60 and prayed for judgment in the sum of $207,505.60 plus interest, attorney's fees as provided in the JOA. *Id. at ¶6.*

On March 29, 2016, GCW filed an Answer as well as a Counterclaim and Third Party Complaint. *R. 5*. GCW denied liability and named KASH as a counterclaim defendant and ISLA as a third-party defendant. GCW asserted diversity jurisdiction and federal question jurisdiction, asserting a claim under 18 U.S.C. § 1964, Civil RICO. *Id.*

ISLA and KASH filed their first motions to dismiss GCW's civil RICO claims on June 21, 2016 and July 20, 2016, respectively. *R. 18; 30*. GCW filed an opposition memorandum and the Court conducted oral argument on the parties' briefs on August

---

[1] In the first PA GCW acquired 75% interest with ISLA retaining 25%. The second PA provided for acquisition by GCW of all by a 3.25% working interest to be retained by ISLA. *R. 38-6; 38-7.*

17, 2016. *R. 35*. At the hearing, the Court expressed concern as to whether GCW's RICO claims had established the elements required under RICO. Based on GCW's oral motion to amend its Counterclaim and Third Party Complaint as to the civil RICO claims, the Court granted GCW leave to amend its Counterclaim and Third Party Complaint and denied ISLA and KASH's motions to dismiss without prejudice to re-urge after GCW filed its amended Counterclaim and Third Party Complaint. GCW filed its First Supplemental and Amended Counterclaim and Third Party Complaint (collectively "Amended Counterclaim") on August 31, 2016. *R. 38*. Thereafter, ISLA and KASH filed the motions to dismiss at bar.

In the Amended Counterclaim, GCW added Bernard as a defendant.[2] The Amended Counterclaim alleges that Bernard is the sole owner and General Manager of ISLA[3] who directed the allegedly fraudulent practices carried out by ISLA against GCW, and is therefore liable under RICO along with ISLA and KASH. *Id.* The Amended Counterclaim allegations are as follows:

In the PAs between GCW and ISLA, ISLA assigned to GCW a majority interest in all of the leases and/or seismic permits and lease options for the oil and gas

---

[2] The Amended Counterclaim also removed the allegation in the original Petition that KASH owned an interest in ISLA, *R. 5, ¶ X*, which ISLA disputed at the hearing on oral argument.

[3] The Amended Counterclaim alleges that Bernard is the "sole director and officer of Volcan, Inc. ("Volcan")" and that Volcan is "the sole member/manager of ISLA." *R. 38, ¶¶ 10-11*. In the 2012 PA, Bernard executed the document as ISLA's "managing member." *R. 38-5*.

reserves Project area.[4] *R. 38, ¶¶ 12-13; 38-6, 38-7.* The PA provided for a ten (10) year agreement term. It further provided that ISLA would manage the land functions of the prospects. As the manager for Land Services, ISLA's duties included obtaining seismic permits, options and leases need to drill any exploration well. *Id. at ¶ 17.* The PA provided that ISLA and GCW were to "cooperate in good faith" to establish Prospects[5] within the Project Area. *Id. at ¶ 18.* The PA further required the parties to designate an Operator for the drilling and operating of wells. KASH was retained by GCW to act as Operator. ISLA was required to assist the Operator as manager in order to complete the drilling operations, including "managing all leasing, abstracting, title opinions and curative services necessary to complete the drilling and operating of wells" within the Prospects. *Id. at ¶ 21.*

Two Prospects—the Fusilier Prospect and the Landry Prospect ("the Prospects")—were accepted under the PAs. KASH was hired by GCW to serve as Operator for the Prospects and, pursuant thereto, GCW and KASH executed joint

---

[4] Defendants cite Art. 3.01 of the initial PA which states,

> GCW's designated seismic operator [ISLA] will be responsible for daily coordination of the acquisition effort, including the management of lease brokers, preparation of documents, and payment of bonuses, permit fees or other fees related to the purchase of the Interests (including Leases, Lease Options and/or seismic permits)....

*R. 38-6, p. 6.*

[5] "Prospects" included "an anticipated accumulation of oil and/or gas, which will require the drilling of more than one well ... to capture the anticipated reserves."

4

operating agreements ("JOA") to conduct all Prospect-related operations. *Id. at ¶¶ 22, 23, 25*. GCW alleges that "Bernard, individually and as principal of ISLA," recommended and was instrumental in hiring KASH. *Id. at ¶ 34*. The JOA defined the roles, responsibility and relationship between KASH as Operator and the non-operating interest holders, including GCW (collectively referred to as "GCW"). *Id. at ¶¶ 26; 29*. KASH also held an ownership interest in each Prospect. *Id.*

The JOA also set out the processes and procedures by which KASH and the non-operating interest holders, such as GCW, conducted activities within the Prospect area with the goal of earning revenue and profits through the sale of the minerals. *Id. at ¶ 27*. The JOA was to remain in effect "so long as any of the oil and gas leases subject to [the JOA] remain in force." *Id. at ¶ 28*. In addition to defining KASH's duties and responsibilities as Operator, the JOA allowed KASH to demand and receive advanced payment from GCW, based on their proportionate interests, of the estimated expenses to be incurred for Prospect-related operations. *Id. at ¶ 31*. GCW alleges that KASH requested advanced payment of its proportionate share of the expenses from GCW via emails. *Id. at ¶ 33*.

GCW further alleges that ISLA, "by and through Bernard," hired various companies and contractors to perform some of the Land Services on its behalf. *Id. at ¶ 36*. ISLA, "by and through Bernard," billed and submitted invoices for the Land

5

Services performed by those contractors, as well as invoices for the Land Services ISLA itself performed, to KASH. *Id. at ¶ 37.* KASH either paid the invoices with funds pre-paid by GCW or tendered the invoices directly to GCW by emails. *Id. at ¶ 38.*

GCW also alleged that ISLA, "by and through Bernard," hired and collected invoices from Basin Land Services, LLC ("Basin"), one of the Land Service contractors hired by ISLA, and then reported on its invoices submitted to KASH charges and day rates attributed to Basin that were in excess of Basin's actual charges and rates. *Id. at ¶39.* GCW further alleged that ISLA fraudulently padded its invoices submitted to KASH and that those fraudulent invoices are the basis for KASH's Petition against GCW. *Id.* GCW alleged that the invoices submitted by ISLA, "by and through Bernard," to KASH or GCW, pursuant to the PA or in connection with the Prospects, contained fraudulent charges that reflected service times in excess of actual times spent "by ISLA employees (including Bernard)" and/or hired contractors in performing the Land Services, as well as service rates in excess of those charged by the hired contractors performing the Land Services. *R. 39–41.*

GCW listed ten (10) different instances of the alleged "fraudulent padding" which occurred from February 16, 2015 through June 1, 2015. *Id. at ¶¶40-41.* In each instance, GCW alleged that ISLA submitted work attributed to the contractor hired

by ISLA, Basin Land Services, L.L.C., at a day rate of $525/day when Basin's actual day rate was $350/day. *R. 41*. GCW further alleged that KASH had "full knowledge of ISLA/Bernard's fraudulent billing practices .... and payment of the fraudulent invoices," but continued to facilitate ISLA's fraudulent practices so that KASH would continue to earn profits and not be removed as Operator by "Bernard, as principal of ISLA." *Id. at ¶ 42*.

GCW contends the foregoing action demonstrates that KASH materially breached its contractual obligations under the JOA by: (a) failing to comply with its accounting obligations related to the submission of cost and expense invoices on the Prospects; (b) failing to perform its duties "as a reasonable prudent Operator, in a good and workmanlike manner" by conspiring with or acting with willful disregard and gross negligence in failing to discover ISLA's fraudulent practices;( c) engaged in a pattern of racketeering and fraudulent padding of invoices, etc.; and, (d) conducting its activities in bad faith and with the intend to defraud. In the alternative, GCW contends that KASH's actions constituted conscious indifference, gross negligence and willful disregard to ISLA's fraudulent practices. *Id. at ¶¶ 44-48*.

GCW also alleges breach of contract against ISLA for the material breach of its obligations under the PA by: (a) engaging in a pattern of racketeering and fraudulent billing practices, etc.; and (b) conducting its activities in bad faith and with the intend

to defraud. *Id. at ¶¶ 49-50.* GCW further alleges that KASH and ISLA, "by and through Bernard," breached their obligations under the PA by preparing, submitting and facilitating the payment of invoices that were fraudulently padded and/or marked up "by ISLA and/or Bernard."[6]

Finally, GCW alleges that Bernard and ISLA, as well as KASH, conspiring with Bernard and ISLA, are liable under RICO, 18 U.S.C. § 1962, in that they are each a "RICO person" which are members of an "association-in-fact" enterprise that conducted "a pattern of racketeering activity," consisting of fraudulent billing practices connected to the acquisition, establishment, conduct or control of an enterprise. *Id. at ¶ 63*. GCW prays for reimbursement of all funds paid by GCW that were based on fraudulent invoices, and damages sustained as the result of Bernard, ISLA and KASH's fraudulent and grossly negligence conduct,[7] as well as treble damages pursuant to 18 U.S.C. § 1964.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct.

---

[6] The Court notes that the PA was executed between GCW and ISLA. Thus, neither KASH nor Bernard individually, was a party to the PA.

[7] Defendants contend that the allegations regarding the Basin invoices are the only factual pleadings which provide any evidence of the amount of these funds and that they total $7,950.00. *R. 41-1, p. 2.*

1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

## III. ANALYSIS

GCW alleges claims under RICO § 1962(b), (c) and (d) by alleging ISLA, Bernard and KASH fraudulently padded invoices, hours, day rates and fees charged by Land Services contractors throughout the development of the Prospects. Essentially, these subsections provide: (b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering activity; (c) a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity; and (d) a person cannot conspire to violate subsections (a), (b), or (c). *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir.1995).

"RICO creates a civil cause of action for any person injured in his business or property by reason of a violation of section 1962." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir.2000). "RICO both protects a legitimate 'enterprise' from those who would use unlawful acts to victimize it ... and also protects the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a 'vehicle' through which unlawful ... activity is committed." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001).

To plead a RICO claim under § 1962, GCW must allege: "1) a person who engages in 2) a pattern of racketeering activity, 3) connected to the acquisition, establishment, conduct or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir.2007). Assuming that the three elements of a RICO person, a pattern of

racketeering activity, and a RICO enterprise are met, the Court may then continue to the substantive requirements of each respective subsection.

To withstand a motion to dismiss, a civil RICO plaintiff must allege facts sufficient to establish each of the essential elements of his or her RICO claim. *See Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir.1998). A plaintiff must allege specific facts concerning (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *see also Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir.1989) (finding that each of RICO's essential elements "is a term of art which carries its own inherent requirements of particularity").

## A. The Person/Enterprise Distinction

Defendants argue that GCW fails to plead the existence of a RICO "enterprise" which is separate and distinct from the RICO "person." They contend that because GCW alleges that ISLA and KASH are both RICO persons and that ISLA is an enterprise and KASH and ISLA are the members of an association-in-fact enterprise (the "ISLA–KASH Association"), its civil RICO claim fails the distinctiveness requirement as a matter of law. They further contend, "[t]his principle is deeply imbedded in Fifth Circuit law." R. 41, p. 8, citing *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1462 (5th Cir. 1991); *Landry v. Air Line Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404, 433 (5th Cir.1990); *Manax v. McNamara*, 842 F.2d 808, 811

11

(5th Cir. 1988); and *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987).[8]

Defendants' first argument implicates the distinctiveness requirement of section 1962. Because "a RICO person cannot employ or associate with himself," *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir.1995), a plaintiff asserting a section 1962 violation must demonstrate the existence of two distinct entities: "(1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Kushner*, 533 U.S. at 161; *see also Old Time Enterprises, Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir.1989) (noting that the "person" who engaged in racketeering "must be distinct from the enterprise whose affairs are thereby conducted").

### *1. RICO person*

In its Amended Counterclaim, GCW continues to allege that the defendants ISLA and KASH are RICO persons but adds Bernard, as an individual defendant. The RICO allegations related to Bernard are based on ISLA's allegedly fraudulent actions carried out "by and through Bernard." Defendants contend that Bernard is added "without benefit of any attempt to pierce the corporate veil existing between Mr. Bernard and ISLA." *R. 41-1, p. 2*. Defendants, however, provide neither support for

---

[8] The Court notes that the cases cited by GCW were decided before the Fifth Circuit's holding in *St. Paul Mercury Inc., Co. v. Williamson*, 224 F.3d 425, 447 (5th Cir.2000). *Infra.*

nor analysis of the significance of that contention.

Contrary to Defendants' concern as to Bernard's addition as a RICO defendant, "an employee who conducts the affairs of a corporation through illegal acts comes within the terms of a statute that forbids any 'person' unlawfully to conduct an 'enterprise'" particularly when the statute explicitly defines 'person' to include 'any individual ... capable of holding a legal or beneficial interest in property,' and defines 'enterprise' to include a 'corporation.' 18 U.S.C. §§ 1961(3), (4).... the employee and the corporation are different 'persons,' even where the employee is the corporation's sole owner. After all, incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs." *Kushner*, 533 U.S. at 163 (CEO and sole shareholder could be RICO person and also part of RICO enterprise consisting of himself and the company).

### 2. RICO Enterprise

As previously noted, a RICO enterprise can be a legal entity, such as a corporation or partnership or an association-in-fact enterprise. *Elliott*, 867 F.2d at 881. Where a legal entity is the defendant, it may not be both a person and an enterprise under RICO. *See St. Paul Mercury Inc., Co. v. Williamson*, 224 F.3d 425, 447 (5th Cir.2000). Nevertheless, "[a]lthough a [corporate] defendant may not be both a person and an enterprise, an [individual] defendant may be both a person and a part of an

13

enterprise. In such a case, the individual defendant is distinct from the organizational entity." *Id*.[9]

While GCW's original Counterclaim and Third Party Complaint failed to mention the term "enterprise," the Amended Counterclaim alleges that ISLA "by and through Bernard" and KASH acted as an "association in fact" and was an "enterprise" which obtained funds from fraudulent billing activity to create themselves. ISLA and KASH are corporate defendants while Bernard is an individual defendant. "Despite the somewhat confusing hair splitting that has occurred in this area of RICO case law over the last decade, this type of overlap between alleged enterprise persons and an association-in-fact enterprise is recognized." *Allstate Insurance Company v. Benhamou*, 190 F.Supp.3d 631, 648 (S.D.Tex., 2016) (citing *St. Paul*, 224 F.3d at 447 ("Although a defendant may not be both a person and an enterprise, a defendant may be both a person and a part of an enterprise.")).

In *St. Paul*, the Fifth Circuit distinguished its earlier holdings, stating that although the identified defendants—the RICO persons—were essentially the alleged association-in-fact, "[a] collective entity is something more than the members of which

---

[9] While *St. Paul* is distinguishable from this case because it involved individual defendants, not a corporate entity like ISLA or KASH, courts in the Fifth Circuit hold that a corporation can be a RICO person and a member of an association-in-fact. *See, Robinson v. Standard Mortgage Corporation,* 191 F.Supp.3d 630, 639 (E.D.La., 2016), *Burford v. Cargill, Inc.*, 2011 WL 4382124, at *5 (W.D.La. Sept. 20, 2011) ("[A] corporate defendant [can] simultaneously be a RICO person and a member of an association-in-fact enterprise...."), *TransFirst Holdings, Inc. v. Phillips*, 2007 WL 1468553, *3 (N.D.Tex. May 18, 2007).

it is comprised." *Id.* at 447. The court reasoned that to find otherwise would permit an individual member of a collective enterprise, such as an association-in-fact, to escape prosecution for violating § 1962 because he would not be considered distinct from the enterprise. *Id*. In explaining the rationale for recognizing the difference, the court explicitly acknowledged the use of the pleading method employed in this case:

> To get around having a corporation named as both a RICO defendant and a RICO enterprise, *many plaintiffs have charged the corporation as being part of an association-in-fact enterprise and also as a RICO defendant*. Courts have roundly criticized this formulation. In some ways, that formulation parallels the situation where individuals are named as defendants and as being part of an association-in-fact, and accordingly, the criticism has fed the notion that no defendant can be a part of the association-in-fact enterprise or it would violate the person/enterprise distinction. But the criticism pertaining to having corporations listed as being a part of the association-in-fact is due to the fact that a § 1962(c) enterprise must be more than an association of individuals or entities conducting the normal affairs of a defendant corporation. The criticism is generally unwarranted where corporations are not involved.

*Id*. at 434 n. 16 (emphasis added).

Here, GCW alleges in the Amended Counterclaim that an enterprise existed between ISLA, Bernard and KASH, all three of whom have been named as defendants. The Fifth Circuit precedence is clear that an association-in-fact is not a "person" for RICO purposes. *See e.g., St. Paul,* at 447 ("The RICO statute distinguishes between a corporation and an association-in-fact with respect to the 'person'" element."). Thus, the association-in-fact of ISLA, Bernard and KASH is not a person, and is therefore

distinct from ISLA, Bernard and KASH as "persons."

Based on these allegations in the Amended Counterclaim, GCW has sufficiently met the distinctiveness requirement between the RICO "person" and "enterprise."

## B. Racketeering Activity

To demonstrate a pattern of racketeering activity, a plaintiff must show both a relationship between the predicate offenses—here mail fraud and wire fraud—and the threat of continuing activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "These requirements keep civil RICO focused on the long term criminal conduct Congress intended it to address and prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law." *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016).

Defendants challenge the "threat of continuing activity," or "continuity," element. There are two ways to demonstrate continuity: (1) a "closed period of repeated conduct," *H.J. Inc.*, 492 U.S. at 241; or (2) an open-ended period of conduct that "involves a threat of continued racketeering activity and may be established by a showing that there is a specific threat of repetition extending indefinitely into the future, or that the predicates are a regular way of conducting a defendant's ongoing legitimate business." *Malvino*, 840 F.3d at 232.

GCW alleges Defendants' actions of fraudulently padding invoices charged by

16

Land Services contractors throughout the development of the Prospects were submitted by email, thus constituting related predicate acts of mail fraud and wire fraud.[10] 18 U.S.C. § 1961. GCW's Amended Counterclaim cites ten (10) invoices concerning one service contractor, Basin Land Services, LLC, which are dated from February 16, 2015 to June 1, 2015, a three and one-half month period—all under the 2013 PA. *R. 38, ¶ 41*. Defendants assert that GCW's pleading as to continuity consists of an apparent argument that the existence of the two PAs, each with a 10-year term, provides the continuity requirement, despite the fact that KASH is not a party to the PAs. Disputing this "apparent" argument, they note that the absence of any other evidence alleged by GCW besides these ten invoices extending three and one-half months in 2015 establishes that there is no continuation of any activity among the parties. The Court agrees.

In *Malvino*, the Fifth Circuit recently considered a similar RICO claim involving an alleged pattern of criminal activity in which thirty-one sales to one individual were made over five months—a closed-ended continuity.[11] The court determined that the brief period of five months was insufficient to support a finding of closed-ended continuity. The *Malvino* court stated,

---

[10] Mail fraud is in violation of 18 U.S.C. § 1341 and wire fraud is in violation of 18 U.S.C. § 1343.

[11] The court stated that the evidence did not support a finding of open-ended continuity, the less common way to establish a pattern. *Id.*, at 232.

> A closed period of repeated conduct requires predicate acts that extend over a substantial period of time. Predicate acts extending over a few weeks or months ... do not satisfy this requirement. We have found seven months of activity insufficient. *Tel–phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992); *contrast United States v. Bustamante*, 45 F.3d 933, 941–42 (5th Cir. 1995) (racketeering acts extending nearly four years suffice).This is consistent with decisions in other circuits. *See Wisdom v. First Midwest Bank*, 167 F.3d 402, 407 (8th Cir. 1999) (holding that ten month period was too short to establish closed-ended continuity); *Tabas v. Tabas*, 47 F.3d 1280, 1293 (3d Cir. 1995) ("[C]onduct lasting no more than twelve months [does] not meet the standard for closed-ended continuity."); *Religious Technology Ctr. v. Wollersheim*, 971 F.2d 364, 366–67 (9th Cir. 1992) (concluding that a pattern of activity lasting only a few months does not reflect long term criminal conduct to which RICO was intended to apply).

*Malvino,* 840 F.3d at 232.

Here, there is no allegation that the fraud GCW alleges would have continued indefinitely but for this lawsuit. First, the record provides no evidence of other victims. More significantly, it is undisputed that the leases obtained pursuant to the JOA have terminated.[12] In a case like this, where the enterprise's goals have been accomplished, and where those goals were achieved in a matter of months, through a discrete pattern of activity, there is no continuity. *See Landry*, 901 F.2d at 433. Accordingly, the Amended Complaint fails to plausibly allege that GCW has sufficiently alleged a pattern of racketeering.

---

[12] Defendants represent that "Two wells were drilled, both dry holes. Notwithstanding the 10-year term stated in the PA, the [JOA] has terminated and there is no likelihood that any further participation will occur between ISLA and GCW." *R. 41-1, p. 10.*

18

Because GCW's Amended Counterclaim fails to state a substantive RICO claim upon which relief may be granted, in particular because it fails to allege a pattern of racketeering, GCW's claims under both § 1962(b) and § 1962(c). Under both subsections the element of "pattern of racketeering" must be established.[13] GCW also asserts a claim under 18 U.S.C. § 1962(d), which prohibits conspiring to violate §§ 1962(b) and (c). *See Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 930 (5th Cir.2002) ("The failure to plead the requisite elements of either a § 1962(a) [§ 1962 (b)] or a § 1962(c) violation implicitly means that [Nolen] cannot plead a conspiracy to violate either section.").

## IV. CONCLUSION

For the foregoing reasons, the undersigned recommends that the Motion For Partial Dismissal filed by ISLA Resources, LLC and Louis E. Bernard [Rec. Doc. 41] and the Motion To Partially Dismiss filed by KASH Oil & Gas Inc. [Rec. Doc. 46] be GRANTED and Gulf Coast Western's RICO claims be DISMISSED WITH PREJUDICE for failure to state a cause of action.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this

---

[13] As to subsection (b), a plaintiff must show that his injuries were proximately caused by a RICO person gaining an interest in, or control of, the enterprise through a pattern of racketeering activity. Under subsection (c), the affairs of the enterprise must be conducted through a pattern of racketeering. *Crowe v. Henry*, 43 F.3d 198, 205 (C.A.5 (La.),1995)

report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 8th day of February, 2017.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE