# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

Kash Oil & Gas, Inc.                                     Civil Action No. 6:16-cv-00380

versus                                                                  Judge Robert G. James

Gulf Coast Western LLC                       Magistrate Judge Carol B. Whitehurst

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the District Judge, is a Motion for Summary Judgment, filed by Third Party Defendants, ISLA Resources, LLC ("ISLA") and Louis E. Bernard, Jr. ("Bernard")[1] [Rec. Doc. 73]. A Memorandum in Opposition to the motion was filed by Defendant and Third Party Plaintiff Gulf Coast Western LLC's ("GCW") [Rec. Doc. 82]. A Reply memorandum was then filed by and ISLA and Bernard. [Rec. Doc. 106]. The Motion came before the Court for hearing on oral argument on July 19, 2017. For the following reasons, the undersigned will recommend that the Motion be denied.

---

[1] While ISLA styled this Motion as being brought by ISLA **and** Louis Bernard, Jr., Bernard also filed a Motion to Dismiss, *R. 72*, and a Motion for Summary Judgment, *R. 74*. The Court has considered Bernard's Motions and recommended that the Motion to Dismiss be granted and the claims against Bernard be dismissed and that the Motion for Summary Judgment be dismissed as moot. Therefore, the undersigned will consider only the claims against ISLA in this Motion for Summary Judgment.

# I. BACKGROUND

*A. Factual Background*

This action arises from the acquisition of leases and/or seismic permits and lease options for the exploration, development and acquisition of oil and gas reserves on certain property in St. Landry and Evangeline Parishes, Louisiana, held and owned by ISLA. Relevant to this action, two drilling prospects, the Landry and Fuselier Prospects, were developed and a well was ultimately drilled on each Prospect.

On September 11, 2012, GCW and ISLA entered into the first of two Participation Agreements (sometimes referred to as "PA–1") by which ISLA and Landel Professional Services conveyed to GCW a 75% interest in all existing rights covering the Landry and Fuselier Prospects, subject to a 25% working interest in favor of ISLA. *R. 38-5, pp. 2-3*. This agreement resulted in GCW acquiring 56.25% of the rights but paying 75% of the costs associated with the Project to the Project investors.

PA–1 imposed a duty on ISLA "to perform certain services in connection with the Landry and Fuselier Prospects, including the management of seismic permits, lease option acquisition efforts, management of lease brokers, preparation of documents, payment of bonuses, permit fees and other related expenses, and management of all leasing, abstracting, title opinions and curative services necessary to complete the drilling and operating of the wells within the Prospect areas"

(sometimes referred to as "Land Services"). *R. 38, ¶ 35*. ISLA hired various companies and contractors to perform some of the Land Services on its behalf. The companies and contractors submitted invoices to ISLA for payment of their performance, *Id at ¶ 36.* ISLA billed KASH, the Operator for the Landry and Fuselier Prospects, for the charges of the hired companies and contractors as well as ISLA's own charges. *Id at ¶ 37.* Kash either paid ISLA's Land Services invoices with funds pre-paid by GCW for the Prospects, or tendered ISLA's Land Services invoices directly to GCW for payment of its proportionate share. *Id at ¶ 38*.

The second Participation Agreement, dated April 1, 2103 ("PA–2"), did not substantively alter anything of significance to this dispute. *R. 38-6*. Rather, the main function of the PA-2 was to alter the ownership interest between ISLA and GCW in the Project, as reflected in Articles 2.01 through 2.07 of the Agreement. *R. 38-6, pp. 2-5*. PA–2 resulted in GCW paying 100% of the costs of acquisition of interest, but only acquiring an 87% ownership interest in same. ISLA retained the remaining interest. *Id.*

Section II in both PA–1 and PA–2 allowed ISLA to bill working interest holders for "costs" incurred for the Land Services contemplated therein, including "brokerage and legal." *R. 38-5, § 2.03, p. 4; R. 38-6, § 2.02, pp. 3-4*. Article 5.09 of PA–1 and PA–2 required invoicing for Land Services "brokerage costs" to be "not on a promoted basis." *R. 38-5, p. 9; R. 38-6, p.11*.

3

*B. Procedural Background*

This action was filed in the Fifteenth Judicial Court, Lafayette, Louisiana, by Kash Oil & Gas Inc. ("Kash") against GCW for unpaid invoices sent by Kash to GCW, including invoices sent by ISLA for Land Services in the acquisition of leases in the Landry and Fuselier Prospects. *R. 1*. On March 29, 2016, GCW removed this case and filed a counterclaim against Kash and a third party claim against ISLA, alleging Breach of Contract, fraudulent and/or negligent misrepresentation and RICO claims against Kash and ISLA. *R. 5*. GCW later filed an Amended Counterclaim and added Bernard, the manager of ISLA, as a third party defendant alleging fraudulent and/or negligent misrepresentation and RICO claims against him individually. *R. 38*. The undersigned issued a Report and Recommendation recommending that the RICO claims alleged by GCW be dismissed. *R. 62*. The District Court dismissed the RICO claims by Judgment entered April 6, 2017. *R. 70, 71*. The Court conducted oral argument on the pending motions filed by each defendant (including the instant motion) on July 19, 2017. In the hearing, counsel for GCW represented to the Court that it and Kash had reached an amicable agreement as to their claims against each other. *R. 114*. The District Court entered the Compromise, Settlement, Release and Indemnity Agreement, *R. 119*, into the record on July 21, 2017. *R. 121*. GCW also represented at the hearing that it would no longer pursue the fraudulent misrepresentation claims against Bernard, and therefore, the only remaining claim

against Bernard was for negligent misrepresentation. *R. 114*. On July 27, 2017, the undersigned issued a Report and Recommendation recommending to the District Judge that the remaining negligent misrepresentation claim against Bernard be dismissed.

## II. CONTENTIONS OF THE PARTIES

In its Motion, ISLA contends that GCW cannot prove, and has not presented any evidence to support its claim for fraudulent misrepresentation of the invoices at issue. ISLA disputes GCW's contention that the term "a promoted basis" in Article 5.09 of the PAs means that ISLA's work associated with drilling of Prospects were to be paid at cost without any additional charge. Rather, ISLA contends the billing practices of ISLA were not acts of fraud, but were the normal practice in the industry and GCW's breach of contract claims should be dismissed.

GCW argues that despite the language of the PAs, ISLA charged GCW mark-ups on all brokerage services. GCW contends that ISLA's agent, Bernard, advised GCW's principal, Matthew Fleeger, that ISLA would bill GCW at cost with no mark-ups for all brokerage services. GCW further contends that Bernard also sent emails to GCW representatives suggesting that ISLA was billing for land services at its actual cost.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed.R.Civ.P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir.2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, as with this motion, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir .1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id*. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little,* 37 F.3d at 1075.

## IV. ANALYSIS

*A. The Parties' Arguments*

GCW asserts that ISLA breached the contracts between them by submitting fraudulent invoices to GCW related to ISLA's work under the Participation Agreements between ISLA and GCW. GCW's breach of contract claims for fraudulent invoices are based on ISLA's inclusion of a management fee for ISLA's performance as seismic operator based on ISLA's own day rates.

ISLA argues that in order for billing for services to be fraudulent, GCW must establish "some measure by which the amount charged exceeded a contractual restriction and/or limitation, or that the services for which the billing occurred were not provided." ISLA maintains that GCW cannot prove its claims of fraud because there is no allegation that ISLA did not perform the management required under

7

Article 3.01, there is no allegation of any "kickbacks" and there is no allegation that the "padding" related to services not rendered. Thus, ISLA contends, GCW cannot prove that ISLA's actions amounted to fraud rather than the purely ubiquitous act of billing for its services.

In further support of its argument related to the alleged fraudulent billing invoices, ISLA argues that because there is no language in the Participation Agreement's as to how it would be compensated for its efforts in managing the acquisition of interests within the Project Area, GCW cannot prove that its actions were in breach of the contracts (PAs) between them. Rather, ISLA relies on evidence outside the contracts to support its position.

Initially, ISLA cites the April 12, 2017 deposition testimony of Basin's Land Services' ("Basin") owner, Wendy Genovese, regarding a drilling prospect in which Basin was hired by GCW to perform duties similar to those performed by ISLA in this case. *R. 73-12, Depo. Of Genovese, pp. 107–113*. ISLA contends that Genovese's testimony provides that GCW did not complain about the management fees Basin charged to GCW on that prospect for procedures "identical" to those at issue in this case. *Id., R. 73-14.* ISLA also cites the Expert Report of Mark K. Miller, "an expert in the field of land brokerage protocols" wherein ISLA asked Miller "to address whether or not ISLA's billing practices for land brokerage were outside of normal business practices and customs, including Fraud." *R. 73-1, p. 24; R. 73-15*. In his

Report, Miller stated:

> in the course of my land brokerage work over my entire career, I have engaged in exactly the same practice. Whereby I pay sub-brokers one day rate and charge a different day rate unto the client. This is the NORM in our business, and according to the materials provided for my review is also exactly how Ms. Genovese conducted her billing to the same client (GCW), but on a different project.

*R. 73-15.* Based on the above, ISLA contends that the invoices submitted to GCW were not in violation of the contracts between them nor did they constitute fraud. Rather they represented ISLA management fees which are allowed in the normal business practices of the oil and gas industry.

GCW argues that ISLA improperly attempts to use parol or extrinsic evidence—Miller's Expert Report and Genovese's testimony— to alter or interpret the terms of the contracts at issue—the Participation Agreements. *R. 82, p. 10.* GCW asserts that ISLA's contentions that there are no provisions within the Participation Agreements to provide for the compensation of ISLA and no provision prohibiting ISLA from billing mark-ups are incorrect. Rather, it argues that the plain language reading of the Participation Agreements provides that ISLA was limited to billing GCW for its "costs."

First, under Article 2.02. GCW states that the definition of "cost" is "(a) the amount of money or the like asked or paid for a thing; price.... (c) the amount paid for something by a dealer, contractor, etc., a markup is usually added to this amount to

9

arrive at a selling price." *Webster's New Twentieth Century Dictionary Unabridged* (2nd ed. 1983). GCW concludes that, using the plain meaning of the words, ISLA was specifically prohibited by Article 2.02 from charging any type of mark-up, in this case a management fee, in excess of its actual brokerage costs; (2) all billing to GCW was to be "not on a promoted basis" as provided in Article 5.09; and, (3) ISLA was provided with compensation according to the plain meaning of the Participation Agreements in that ISLA's "cause" for entering into the Participation Agreements was its retained working interest and overiding royalty interest. GCW further argues that no interpretation beyond the plain meaning of the words is needed to understand the provision in Article 5.09 as it provides that the costs associated with drilling of Prospects, including "brokerage costs", were not to be billed "on a promoted basis." It maintains that the management fees added by ISLA were mark-ups added on a promoted basis.

GCW submits, however, if parol evidence is considered by the Court because the terms of the Participation Agreements are vague and/or ambiguous, the extrinsic/parol evidence submitted in this case creates genuine issues of material fact and precludes summary judgment. GCW cites the March 21, 2017 deposition of Matthew H. Fleeger, the president of GCW, who testified that Bernard specifically advised him that ISLA would bill GCW at cost with no mark-ups for brokerage services. *R. 82-3, Fleeger Depo., pp. 7-8.* GCW further asserts that Fleeger's

10

testimony is supported by emails from Bernard. In an email from Bernard to Fleeger, Bernard confirmed that the email stated, "I could not cut any of the fees owed to manpower.... If I do so then I am in the hole for jobs that were done in full and honest time and costs and required for this program." *R. 82-4, Bernard Depo., pp.10-11.* In an email from Bernard to Gaylon Haigood (on behalf of GCW), Bernard stated that he and his entities "have never 'pocketed' a partners contributions." *R. 82-5, Haigood Depo., p. 13, Exh. 28.* GCW maintains that the foregoing demonstrates two material facts: (1) Bernard intentionally gave GCW the impression that he and his company (or companies) were partners of GCW, not merely a hired lead broker; and (2) Bernard and his companies were not charging anymore for the project than costs (i.e. making a profit from a partner's contributions).

## B. Breach of Contract

Based on the parties' arguments, the Court must determine whether or not the contract provisions in the Participation Agreements are ambiguous and if so, must consider the extrinsic evidence in the record. The parties do not dispute that Louisiana contracts law applies in this diversity case. "Under Louisiana law, the requirements for a valid contract are capacity, consent, a lawful cause, and a valid object." *Granger v. Christus Health Central Louisiana*, 144 So. 3d 736 (La. 2013). Under Louisiana law, when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the

parties' intent. La. Civ. Code art. 2046. Thus, common intent is determined "in accordance with the general, ordinary, plain and popular meaning of the words used in the contract." *Lobell v. Rosenberg*, 186 So.3d 83, 89 (La. 2015) . "When a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded ... as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties." *Id*. Further, each provision of a contract must be interpreted in light of the other provisions and the contract as a whole. La. Civ. Code art. 2050.

Generally, parol or extrinsic evidence is inadmissible to alter or interpret the terms of a contract. *Campbell v. Melton*, 817 So.2d 69, 75 (La. 2002). If the "written expression of the common intention of the parties is ambiguous," however, parol or extrinsic evidence may be admitted to aid in the interpretation of the contract. *Id.* A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed. *Id.*

Considering the language in Articles 2.01 and 5.09 of the Participation Agreements, the Court finds that the contracts are ambiguous in that there is uncertainty or ambiguity as to these provisions and the parties' intent cannot be ascertained from their language. In particular, the Court finds the meaning of the

language in Article 5.09, "for all costs associated with drilling of prospects ... [to be] not on a promoted basis" to be ambiguous. Thus, the Court finds that parol or extrinsic evidence is admissible to interpret the terms of these provisions. Further, upon considering the record, including the deposition testimony of Fleeger related to the statements and emails of Bernard, the Court finds that genuine disputes of material fact exist as to whether or not the parties intended that ISLA's payment for Land Services should have been without the addition of managements fees, such that ISLA's earnings would be limited primarily to its working interest in the Prospects.

## V. CONCLUSION

Based on the foregoing, the undersigned recommends that the Motion for Summary Judgment, filed by Third Party Defendants, ISLA Resources, LLC and Louis E. Bernard, Jr. [Rec. Doc. 73] be **DENIED** based on the existence of genuine issues of material facts.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the

proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 31st day of August, 2017.

---
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE